UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:13-CV-00009-TBR

UNITED STATES OF AMERICA *f/u/b/o*            Plaintiff
FORREST B. WHITE, JR. MASONRY, INC.

v.

SAFECO INSURANCE COMPANY OF AMERICA, *et al.*      Defendants

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendant Safeco Insurance Company of America's and Defendants PBS&J Constructors, Inc., and Peter R. Brown Construction, Inc.'s respective Motions To Dismiss or, in the Alternative, To Stay Proceedings Pending Arbitration. (Docket Nos. 10 & 9, respectively.) Plaintiff has responded to both, (Docket Nos. 16 & 15, respectively), and these Defendants each have replied, (Docket No. 19 & 18). These matters are now ripe for adjudication.

BACKGROUND

Plaintiff United States of America f/u/b/o Forrest B. White, Jr. Masonry, Inc. (White) filed its original Complaint in this matter on January 18, 2013. (*See* Docket No. 1.) In December 2009, Defendant I.L. Fleming Construction, Inc. (Fleming) entered into a contract (the "Prime Contract") with the United States Army Corps of Engineers for a construction project at Fort Campbell, Kentucky (the "Project"). In connection with the Project, Fleming and Safeco Insurance Company of America (Safeco), as principal and surety, respectively, executed a "Payment Bond," a copy of which is attached to White's

Page 1 of 12

Complaint.  (*See* Docket No. 1-1.)  Fleming subcontracted the masonry portion of the Project to White.   In September 2010, White received a proposed written subcontract agreement (the "Subcontract"), which White executed and returned.  A copy of the Subcontract was not attached to White's Complaint but does appear in the record attached to Safeco's instant Motion.  (*See* Docket No. 10-4.)  It is not clear whether Fleming ever executed the Subcontract.  White alleges that during the course of the performance of the Project, the masonry work was delayed or suspended due to no fault on White's part.  According to White, its work on the project was to begin on October 1, 2010, and was to be completed by November 24, 2010; however, White states that the masonry work did not begin until November 1, 2010, and that the bulk of work did not commence until December 20, 2010.  White claims that during the delay, it was directed to maintain its labor and equipment onsite.  White further states that it completed all of its obligations with respect to performance of the masonry work on the Project as of January 23, 2012.

At some point in late 2011, White became aware that the Project had been taken over by Safeco.  In November 2011, the Army Corps of Engineers notified Safeco that it intended to terminate Fleming for defaulting on its performance of the Prime Contract.  On December 13, 2011, a "Takeover Agreement" was entered into among Safeco, Fleming, and the Army Corps of Engineers, whereby Safeco agreed to take over and complete the Project.  (*See* Docket No. 10-5.)  The Takeover Agreement is referenced in White's Complaint, (*see* Docket No. 1, at 6-7), and appears in the record as an attachment to Safeco's instant Motion, (Docket No. 10-5).  Thereafter, on December 19, 2011, Safeco entered into a "Completion Agreement" with Defendants PBS&J Constructors, Inc. (PBS&J) and Peter R. Brown Construction, Inc. (Brown), whereby PBS&J and

Brown agreed to undertake completion of the Project. A copy of the Completion Agreement also is attached to White's Complaint. (Docket No. 1-2.) White states that it continued to perform masonry work on the Project under the direction of PBS&J and/or Brown subsequent to the execution of the Completion Agreement.

White asserts four counts in its Complaint. In Count I, White alleges breach of contract against Fleming for failing to make payment to White for the masonry work performed and for failing to compensate White for its damages incurred as a result of the delays that affected White's performance of its work. (Docket No. 1, at 4-5.) White states elsewhere in the record that this claim is not based on the written Subcontract but instead on the fact that "White provided labor and materials on the basis of its quote to Fleming and the verbal discussions between the parties." (Docket No. 21, at 2-3 n. 1.) In Count II, White asserts a claim under the Miller Act, 40 U.S.C. § 3131 *et seq.*, and seeks to hold Safeco liable pursuant to the terms of the Payment Bond. (Docket No. 1, at 5-6.) In Count III, White alleges breach of contract against Safeco relative to the Completion Agreement based on a theory that White is a third-party beneficiary to that agreement. (Docket No. 1, at 6.) And in Count IV, White similarly alleges breach of contract against PBS&J and Brown relative to the Completion Agreement as a third-party beneficiary to that agreement. (Docket No. 1, at 7.)

## STANDARD

The Federal Rules of Civil Procedure require that pleadings, including complaints, contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint may be attacked for failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When

considering a Rule 12(b)(6) motion to dismiss, the court will presume that all the factual allegations in the complaint are true and will draw all reasonable inferences in favor of the nonmoving party. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Additionally, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto [as well as] items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). That is, a complaint must contain enough facts "to state a claim to relief that is plausible on its face." *Id.* at 570. A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

*Twombly*, 550 U.S. at 556). If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

## DISCUSSION

Defendant Safeco and Defendants PBS&J and Brown each move to dismiss the claims against them or, alternatively, to stay this action pending arbitration of White's underlying claim for delay damages against Fleming. The Court in turn will address each of the contested Counts in White's Complaint.

**I.    Miller Act Claim Against Defendant Safeco (Count II)**

Safeco argues that because the Subcontract[1] purports to release Fleming from any claim for delay damages, White cannot recover such damages from Safeco as Fleming's surety. (Docket No. 10-3, at 3-4.) In this regard, Safeco points to paragraph 8.4 of the Subcontract, which provides, in relevant part:

> Subcontractor shall not be entitled to any claim for damages (including but not limited to claims for delay . . .) on account of hindrances or delays from any cause whatsoever. An extension of time shall be Subcontractor's sole and exclusive remedy for any occurrence giving rise to a delay, and [Fleming] shall be released and discharged of and from any claims for damages which Subcontractor may have on account of any cause of delay, whether or not specifically stated herein. . . .

---

[1] Although the Subcontract is not attached to White's Complaint, it is attached to Safeco's Motion to Dismiss. Because the Subcontract is central to White's claims, the Court will consider it in the context of Safeco's Rule 12(b)(6) Motion and need not treat Safeco's Motion as one seeking summary judgment under Rule 56. *See, e.g.*, *Bassett*, 528 F.3d at 430; *Amini*, 259 F.3d at 502.

(Docket No. 10-4, at 9.) Safeco insists that because its liability is coextensive with that of its principal, Fleming, it follows that, under the terms of paragraph 8.4, White "released any claims for delay damages, and cannot recover such damages from Safeco as surety." (Docket No. 10-3, at 3-4.)

White responds, arguing that the written Subcontract is unenforceable because Fleming never executed that agreement. To this end, White points out that paragraph 4.12(1) of the Subcontract expressly requires that the agreement be executed by both parties. White further argues that even if it were enforceable, the "no damage for delay" clause contained therein either is void as against public policy or is subject to a recognized exception such that it still would be unenforceable. Because the Court finds that the so-called no-damage-for-delay clause is void for several reasons, it need not be decided at this juncture whether the written Subcontract itself is enforceable.

First, the no-damage-for-delay clause in paragraph 8.4 is void under the Miller Act. The Miller Act requires the prime contractor on a federal construction project to post both a performance bond and a payment bond. *See* 40 U.S.C. § 3131(b) (formerly 40 U.S.C. § 270). The payment bond provides security to persons who supply labor or materials for the project. Because such suppliers are precluded from filing liens on government facilities, they instead are granted a federal cause of action to satisfy any deficiency in payment by the prime contractor. *See id.* § 3133(b); *see also S. Elec. Health Fund v. Heritage Mut. Ins. Co.*, 147 F. App'x 497, 502 (6th Cir. 2005); *United States ex rel. Interstate Mech. Contractors, Inc. v. Int'l Fidelity Ins. Co.*, 200 F.3d 456, 459 (6th Cir. 2000). Because of the remedial nature of the Miller Act, its provisions are to be liberally construed. *Interstate Mech. Contractors*, 200 F.3d at 459. Furthermore, the Act

expressly provides that "[a] waiver of the right to bring a civil action on a payment bond . . . is void unless the waiver is -- (1) in writing; (2) signed by the person whose right is waived; and (3) executed after the person whose right is waived has furnished labor or material for use in the performance of the contract." 40 U.S.C. § 3133(c). Under the argument advanced by Safeco, the release clause in paragraph 8.4 effectively amounts to a waiver of White's right to bring an action on the payment bond. Though the Subcontract is in writing and was executed by White, it was not executed after White performed masonry work on the Project. As such, the no-damage-for-delay clause in paragraph 8.4 of the written Subcontract would appear void under § 3133(c).

Moreover, even if the no-damage-for-delay clause in paragraph 8.4 were not void under the Miller Act, it nonetheless would be under Kentucky law.[2] The Kentucky Fairness in Construction Act, Ky. Rev. Stat. § 371.400 *et seq.*, provides that certain provisions in construction contracts are void and unenforceable as against public policy. Among such is any "provision that purports to waive, release, or extinguish the right of a contractor or subcontractor to recover costs, additional time, or damages, or obtain an equitable adjustment of the contract, for delays in performing the contract that are, in whole or part, within the control of the contracting entity." Ky. Rev. Stat. § 371.405(2)(c). It appears to the Court that the Subcontract's no-damage-for-delay clause in paragraph 8.4 falls within the statutory language of Ky. Rev. Stat. § 371.405(2)(c) and, thus, is void and unenforceable under Kentucky law.

---

[2] Where there is a distinction between federal and state law, federal substantive law controls in actions brought under the Miller Act; however, interstices may be filled by incorporating state law. *United States ex rel. Astro Cleaning & Packaging Corp. v. Jamison Co.*, 425 F.2d 1281, 1281 n.1 (6th Cir. 1970) (collecting cases).

Therefore, because the release clause in paragraph 8.4 of the Subcontract is void under either the Miller Act or the Kentucky Fairness in Construction Act or both, the Court is unpersuaded by Safeco's argument that White "released any claims for delay damages, and cannot recover such damages from Safeco as surety." (Docket No. 10-3, at 3-4.) For these reasons, Safeco's Motion to Dismiss relative to Count II of White's Complaint will be DENIED.

## II. Breach of Contract Claim Against Safeco (Count III)

Safeco next argues that White's breach of contract claim against it fails because the Takeover Agreement[3] expressly disclaims any third-party beneficiary rights, thereby precluding White's third-party claim. (Docket No. 10-3, at 4-5.) In response, White merely urges that "a reading of that provision of the Takeover Agreement does not as clearly preclude third-party claims as Safeco asserts." (Docket No. 16, at 7.)

"Ordinarily, the obligations arising out of a contract are due only to those with whom it is made; a contract cannot be enforced by a person who is not a party to it or in privity with it, except . . . under certain circumstances, [such as] by a third-party beneficiary." *Prime Finish, LLC v. Cameo, LLC*, 487 F. App'x 956, 959 (6th Cir. 2012) (alterations in original) (quoting *Presnell Constr. Managers, Inc. v. EH Constr., LLC,* 134 S.W.3d 575, 579 (Ky. 2004)). In *Presnell Construction Managers, Inc. v. EH Construction, LLC*, the Kentucky Supreme Court clearly held that "[o]nly a third-party who was intended by the parties to benefit from the contract . . . has standing to sue on a contract; an incidental beneficiary does not acquire such right." 134 S.W.3d at 579. Here, White was not a party to the Takeover Agreement. White does not claim that

---

[3] Though not attached to White's Complaint, the Takeover Agreement is referenced in Count III and is central to White's claims. Accordingly, the Court will consider it in the context of Safeco's Rule 12(b)(6) Motion. *See, e.g.*, *Bassett*, 528 F.3d at 430; *Amini*, 259 F.3d at 502.

Safeco and the Army Corps of Engineers entered into the Takeover Agreement with the intention of benefiting White from that contract. Indeed, paragraph 16 of the Takeover Agreement expressly disclaims the parties' intent to benefit any third party:

> This Agreement is solely for the benefit of USACE [the Army Corps of Engineers] and Surety [Safeco]. USACE and Surety do not intend by any provision of this Agreement to create any rights in or increase the rights of any third-party beneficiaries, nor to confer any benefit upon or enforceable rights under this Agreement or otherwise upon anyone other than USACE and Surety. Specifically, USACE and Surety acknowledge that nothing in this Agreement shall extend or increase the rights of any third-party claimants or the liabilities or obligations of Surety under the [performance and payment] Bonds.

(Docket No. 10-5, at 10.) Accordingly, the Court finds that White's third-party beneficiary claim against Safeco fails to state a claim upon which relief can be granted.

Therefore, Safeco's Motion to Dismiss relative to White's breach of contract claim in Count III will be GRANTED.

### III. Breach of Contract Claim Against PBS&J and Brown (Count IV)

In their Motion to Dismiss, Defendants PBS&J and Brown similarly reference the no-damage-for-delay clause in paragraph 8.4 of the written Subcontract to argue that White waived or released them from any claims for delay damages. (Docket No. 9-3, at 1.) In this regard, PBS&J and Brown insist that "[n]othing in the Completion Agreement requires these Defendants to pay any Subcontractor amounts to which it is not entitled under its Subcontract." (Docket No. 9-3, at 2.) This argument fails for the same reasons discussed *supra* Part I.

PBS&J and Brown also seem to argue that White's claim against them fails because "the only injury or damages pled in the Complaint are alleged to have occurred

prior to April 18, 2011, which was prior to the date of . . . Safeco's Completion Agreement with these Defendants to finish the project." (Docket No. 9-3, at 2.) White responds, arguing that these Defendants' obligations under the Completion Agreement are not limited to the performance of obligations that arose after the Completion Agreement was executed. (Docket No. 15, at 7.)

Under the terms of the Completion Agreement, PBS&J and Brown agreed to "furnish and pay for all labor, materials, services and equipment and [to] do everything else necessary to perform and satisfactorily complete the work required by the Contract Documents." (Docket No. 1-2, at 2-3.) The Completion Agreement defines "Contract Documents" to include the Prime Contract entered into between Fleming and the Army Corps of Engineers. (Docket No. 1-2, at 2-3.) In effect, PBS&J and Brown seem to argue that their agreement to "pay for all labor, materials, services and equipment" necessary to complete the Project, was somehow limited to paying for only those subcontractors that were employed after the Completion Agreement was executed. Contrary to their position, however, the terms of the Completion Agreement suggest that these Defendants assumed Fleming's obligations under the Prime Contract, which would include the obligation to pay for any outstanding amount owed to a then-existing subcontractor such as White. At this time, it appears to the Court that White has a plausible claim for relief against PBS&J and Brown. Accordingly, the Court is not persuaded that White has failed to state a viable claim for relief in Count IV of its Complaint.

For these reasons, PBS&J and Brown's Motion to Dismiss relative to White's breach of contract claim in Count IV will be DENIED.

## IV. Motions To Stay This Action Pending Arbitration

Safeco, PBS&J, and Brown commonly move the Court to stay this action pending arbitration of White's claim against Fleming. (Docket Nos. 10-3, at 5; 9, at 2.) In this regard, Defendants point to an arbitration clause contained in paragraph 11.3 of the written Subcontract, which provides, in relevant part:

> If Prime Contractor [Fleming] and Subcontractor [White] cannot resolve a dispute through good faith discussions, then the parties hereby agree to promptly submit the dispute to a neutral third party who shall be chosen by agreement between Prime Contractor and Subcontractor. . . . If either Prime Contractor or Subcontractor does not agree with the neutral's decision then the dispute shall at Prime Contractor's sole option, be decided by litigation or arbitration . . . .

(Docket No. 10-4, at 13.)

Regardless whether that clause (or the Subcontract itself) is enforceable, the Court does not read it to mandate arbitration in this instance. But even if it did, by its own terms only Fleming could compel White to arbitrate. There is no indication here that Fleming ever exercised that option. Moreover, Defendants do not state on what authority they are entitled to enforce the terms of the Subcontract, a contract to which none of these Defendants was party.

Thus, the Court is unpersuaded that this action should be stayed pending arbitration of White's claims against Fleming. As such, Defendants' respective Motions to stay these proceedings will be DENIED.

CONCLUSION

Therefore, having considered the parties' respective arguments and being otherwise sufficiently advised, consistent with the foregoing;

IT IS HEREBY ORDERED that Defendant Safeco Insurance Company of America's Motion To Dismiss or, in the Alternative, To Stay Proceedings Pending Arbitration, (Docket No. 10), is GRANTED IN PART and DENIED IN PART. Defendant Safeco's Motion is GRANTED as to Plaintiff's breach of contract claim, and Count III of Plaintiff's Complaint is hereby dismissed. Defendant Safeco's Motion is DENIED in all other respects.

IT IS HEREBY FURTHER ORDERED that Defendants PBS&J Constructors, Inc., and Peter R. Brown Construction, Inc.'s Motion To Dismiss or, in the Alternative, To Stay Proceedings Pending Arbitration, (Docket No. 9), is DENIED.

IT IS SO ORDERED.

Date:


cc: Counsel